**Martin M. GREEN, Trustee for the Liquidation of Investment Securities Corp., Plaintiff,**

**v.**

**A. G. EDWARDS & SONS, INC., Defendant.**

**No. 76–598 C (1).**

United States District Court, E. D. Missouri, E. D.

Aug. 4, 1977.

Harry O. Moline, Jr., Moline & Tegethoff, St. Louis, Mo., for plaintiff.

Wm. A. Richter, Lewis R. Mills, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, Chief Judge.

This matter was tried to the Court and the Court has been fully advised by testimony, stipulations, depositions, and briefs of the parties.

### FINDINGS OF FACT

1. Plaintiff herein is the trustee for the liquidation of the Investment Securities Corporation (hereinafter referred to as ISC), pursuant to an order of the United States District Court on July 8, 1974.

2. Defendant A. G. Edwards & Sons, Inc. (hereinafter referred to as Edwards) is a Delaware corporation, with its principal place of business in St. Louis, Missouri, and is a broker-dealer registered with the United States Securities and Exchange Commission.

3. The ISC was a corporation, with its principal place of business in Clayton, Missouri, and was a member of the Securities Investor Protection Corporation and of the National Association of Securities Dealers, Inc., and until July 8, 1974, conducted business as a broker-dealer. ISC was a principal market maker in the common stock of PEC Industries, Inc.

4. On or about June 20, 1974, Brent A. Platt and Norman Flegle sold 3,000 shares

and 1,500 shares of PEC Industries, respectively, through the defendant Edwards to ISC at $31.25 per share. Edwards purchased, in an unrelated transaction, 700 shares of PEC Industries and sent a check to ISC on June 28, 1974, for $362.50. Edwards paid Platt and Flegle for the 4,500 shares of PEC Industries delivered to Edwards.

5. In order to complete the transaction, Edwards delivered to its bank, the Mercantile Trust Company, a total of 3,800 shares of PEC Industries—1,500 shares on June 27, 1974; 1,200 shares on June 28, 1974; and 1,100 shares on July 1, 1974, along with sight drafts drawn against ISC for the total sum of $118,750, which securities and drafts were forwarded to ISC's bank, the First National Bank of Clayton, by the Mercantile Trust Company.

6. On the afternoon of July 2, 1974, the cashier's department of Edwards was informed by Mercantile Trust Company that the sight drafts relating to the 1,200 and 1,500 shares of PEC Industries were being returned unpaid and that the 1,100 shares with the draft attached were still being held at the First National Bank of Clayton unpaid.

7. On July 3, 1974, Mr. Kalinowshi, the Executive Vice President of Edwards, picked up the 1,200 and the 1,500 shares from Mercantile Trust Company and advised the First National Bank of Clayton to continue to hold the 1,100 shares of PEC Industries.

8. On the morning of July 3, 1974, Mr. Kalinowski, together with Mr. Winter and Mr. Bernstein, went to the offices of ISC in Clayton at about 10:00 a. m., and after a short delay, were met by Richard Hayes and an attorney, Curtis Mann. Mr. Hayes is a former employee of Edwards, and at that time was employed by ISC. He advised Kalinowski that the president of ISC was on a vacation and that he (Hayes) was aware that the 3,800 shares of PEC Industries, which had been delivered to the bank, had not been paid for. Hayes advised Kali-

nowski that the $118,750 due on the sight drafts for the 3,800 shares of PEC Industries would be paid for in the afternoon of July 3, 1974, if Edwards would extend the time. Hayes stated that a customer of ISC was attempting to get a loan to purchase some $250,000 worth of PEC Industries and the transaction should be consummated in the afternoon of July 3rd. He stated that ISC had a temporary cash shortage. Hayes agreed with Kalinowski to place an additional 10,000 shares of PEC Industries in escrow with the First National Bank of Clayton, along with 3,800 shares belonging to Edwards. The agreement was formalized in writing. Edwards placed 3,800 shares in escrow with the First National Bank of Clayton and ISC placed 10,000 shares in escrow, with the agreement that all the shares were to be delivered to ISC on payment of the $118,750. The agreement further provided that, if this amount was not paid by 2:30 p. m., Edwards could sell the 13,800 shares of PEC Industries to satisfy the amount due of $118,750.

9. There was no discussion between Hayes and Bernstein as to the financial condition of ISC. As a matter of fact, the audited financial statement of ISC of May 17, 1974, showed an excess of assets over liabilities of more than $90,000. This was shown to Mr. Kalinowski on July 3rd. A computer print-out of ISC received on July 3, 1974, and dated July 2, 1974, showed an excess of assets over liabilities of almost $120,000. Even though the parties have stipulated that ISC was in fact insolvent on July 3, 1974, there is nothing in the evidence to show that either Mr. Kalinowski or Mr. Hayes knew that the company was, in fact, insolvent on that date and the circumstances of this meeting are not sufficient for Mr. Kalinowski to have a reasonable belief that the company was in fact insolvent.

10. At 2:30 p. m., Edwards was informed that the payment of $118,750 had not been paid. Sometime during the day Mark Molasky called someone in Edwards

and advised that he understood that Edwards had 13,800 shares of PEC Industries for which ISC had not paid the $118,750. Molasky agreed to purchase these shares for that amount for a company, Almar Enterprises, Ltd., and the shares were sold after 2:30 p. m., at the First National Bank in Clayton, and Molasky took title for Almar Enterprises, Ltd., to the 13,800 shares of PEC Industries and delivered a cashier's check in the amount of $118,750 to Edwards.

11. The parties have agreed that the purchase price for which Edwards sold the 13,800 shares of PEC Industries to Almar Enterprises, Ltd., was a reasonable price.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action pursuant to the Bankruptcy Act, 11 U.S.C. § 96(b).

2. When ISC delivered to Edwards the 10,000 shares of PEC Industries on July 3, 1974, Edwards and none of its employees knew that ISC was insolvent and they had no reason to believe that it was insolvent.

3. The transfer of the 10,000 shares of PEC Industries to Edwards on July 3, 1974, was not a preferential transfer within the meaning of 11 U.S.C. § 96(b), and, therefore, is not voidable.

4. Judgment will be entered in favor of the defendant and against the plaintiff and the cause will be dismissed with prejudice.

Dated this 4th day of August, 1977.